IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO, SOUTHERN DIVISION

| | |
|---|---|
| WILLIAM A. BOWN,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>BRENT D. REINKE; RONA SIEGERT; RANDY E. BLADES; JIMMIE H. CROSBY; DANIEL METTIE; BECKY A. BLAKE; RONALD D. PIXLER; TIMOTHY J. RICHARDSON; CORIZON, INC., fka CORRECTIONAL MEDICAL SERVICES, INC., a Missouri corporation; KAREN B. BARRETT, PA; APRIL DAWSON, MD; CASSIE RICHINS, LPN; and JOHN and JANE DOES 1-10,<br><br>　　　　　Defendants. | Case No. 1:12-cv-00262-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it plaintiff Bown's motion to compel. The Court heard oral argument on the motion on December 16, 2015, and took the motion under advisement. For the reasons explained below, the Court will grant the motion.

## BACKGROUND

On February 19, 2011, Bown, an inmate at the Idaho Maximum Security Institution (IMSI), complained to guards about severe left arm pain and a burning chest pain. Bown alleges that the IMSI staff failed to recognize that he was suffering a heart

attack. Consequently, he argues, he suffered lengthy delays before being transported to a hospital for treatment, causing him to incur permanent injuries. At this time, medical services for inmates were being provided by a private company – Corizon Inc. – pursuant to a contract with the Idaho Department of Corrections (IDOC).

Within a month of this incident – in March of 2011 – Bown's wife threatened litigation over his medical care in an email to IDOC's Director Reinke. *See Siegert Deposition (Dkt. No. 82-1).* The IDOC, like any prison system, is constantly threatened with litigation. No prison system can be expected to put in place a litigation hold every time an inmate complains. But Bown's case was different. The IDOC immediately conducted two investigations, and claimed that the investigations were protected by the lawyer-client privilege because the IDOC anticipated litigation. *Id.* at p. 31.

The first investigation, conducted within two months or so of the incident, was conducted by the IDOC's Office of Professional Standards (OPS). *Id.* at p. 32. The second investigation was conducted by Rona Siegert, IDOC's Director of Health Services. *Id.* at 32-33.

Despite this knowledge that litigation was forthcoming, IDOC did not send a litigation hold letter until July 18, 2011, in response to Bown filing a Notice of Tort Claim. *See Kubinski Affidavit (Dkt. No. 87-4)* at ¶3. Bown filed that Notice of Tort Claim July 11, 2011. It contained claims against both IDOC and Corizon. In the claim against IDOC, the Notice alleged that "the State of Idaho has the constitutional requirement to provide adequate health care for those in their custody, as well as to provide humane treatment." *See Notice of Tort Claim (Dkt. No. 87-1).* At this time,

IDOC was not providing health care directly but rather was doing so through its contract with Corizon. The claim in the Notice of Tort Claim was thus very clearly a claim that IDOC failed to properly supervise Corizon.

The litigation hold letter was sent by Mark Kubinski in the Attorney General's Office. *See Kubinski Affidavit (Dkt. No. 87-4).* The letter asks certain individuals to preserve all hard copy and electronically stored information (ESI) concerning Bown's claim that on February 19, 2011, the staff refused to treat him. The letter does not direct anyone to preserve records concerning IDOC's supervision of Corizon, and does not seek to preserve any communications between IDOC and Corizon regarding Bown's incident.

The hold letter was sent to five IDOC personnel: (1) Randy Blades, (2) Daniel Mettie, (3) Timothy Richardson. (4) Ronald Pixler, and (5) Becky Blake.[1] Conspicuous by their absence from this list are those who conducted investigations into Bown's claims immediately after the incident, as discussed above: (1) Rona Siegert, and (2) the IDOC's Office of Professional Standards (OPS). Moreover, the letter was not sent to Natalie Warner, IDOC's Quality Assurance Manager who worked with Corizon and had personal involvement in reviewing Corizon's performance in the Bown incident, as discussed further below.

The narrow scope of this litigation hold letter becomes a matter of crucial importance. During the time of the incident – February of 2011 – IDOC used a service

---

[1] The letter directs "any supervisor" on this list to "have your staff search your department, office, or facility for all records related to this matter and maintain them as described in this memo." The record does not reveal whether any supervisor on the list followed that direction.

that routinely deleted emails every 6 months. *Kubinski Affidavit, supra* at ¶ 4. By the time Kubinski sent out his litigation hold letter, 5 months had passed from the incident, and the IDOC emails most closely associated in time with the incident were therefore due to be deleted in one month. If the litigation hold letter imposed too narrow a scope of preservation, many of those emails may have been outside the hold imposed by the letter and destroyed. This raises a spoliation issue that cannot be resolved on the current record. But it remains open for resolution after further discovery, a process the Court will discuss below.

Bown brought this lawsuit against Corizon and three of its employees. He also sued eight employees of IDOC: (1) Brent Reinke, IDOC's Director; (2) Rona Siegert, IDOC's Director of Health Services; (3) Randy Blades, the Warden at IMSI; (4) Jimmie Crosby, the Deputy Warden at IMSI; and (4) four correctional officers at the IMSI.

Among other allegations in the complaint, Bown alleged that "Mr. Reinke, Ms. Siegert, Mr. Blades and Mr. Crosby were responsible for implementing and monitoring the health services at IMSI with authority and responsibility to address and control conditions created or extant there." *See Complaint (Dkt. No. 1)* at ¶47. Bown further alleged that these four IDOC defendants

> violated Bown's constitutional rights by failing to properly implement policies and procedures necessary to adequately respond to Mr. Bown's serious medical needs. *Defendants failed to properly supervise the healthcare services rendered at IMSI* or to ameliorate the conditions created or extant there, evidencing a deliberate indifference to Mr. Bown's serious medical needs.

*Id.* at ¶54. (emphasis added). This language in the original complaint filed in 2012 makes it clear that Bown was challenging IDOC's supervision of Corizon.

This case was stayed for a time while Bown pursued a state court action involving only the Corizon defendants, and not the IDOC defendants, arising out of the same events as the present case. That action resulted in a settlement whereby the Corizon defendants agreed to pay Bown $602,782.50 in return for a dismissal of all claims against them. *See Release (Dkt. No. 56).*

On July 30, 2014, the stay in this case was lifted, the Corizon defendants were dismissed, and the case proceeded against the IDOC defendants. On January 12, 2015, Bown filed a motion to file an amended complaint. He sought to add detail to his original allegations that the IDOC defendants "failed to properly supervise the healthcare services rendered at IMSI . . . ." *See Complaint, supra* at ¶ 54. As Bown explained in his motion, the substantial discovery in the state court action had revealed facts concerning the relationship between IDOC and Corizon that were relevant to Bown's original claim that IDOC failed to implement policies to provide adequate medical care, and failed to properly supervise Corizon. *See Brief (Dkt. No. 53-3)* at p. 3. The Court granted that motion allowing the amendment on June 25, 2015.

After a series of discovery disputes between the parties, the Court set up this hearing to resolve the disputes. At the conclusion of the hearing, the Court extended the deadlines for discovery and other matters, anticipating a ruling requiring a further search of IDOC computers for materials responsive to Bown's discovery requests. That issue will be further discussed below.

The Court will now proceed to discuss the issues raised by Bown's motion to compel.  For ease of reference, the Court will refer to the IDOC officials who are defendants in this action collectively as "IDOC" (recognizing that IDOC itself is not a party to this action).

## ANALYSIS

### Privilege Log

On April 13, 2015, Bown served its request for production of documents on IDOC.  On June 5, 2015, IDOC responded without objecting to any request on the grounds of attorney-client privilege.  *See Responses (Dkt. No. 82-2).*  Five months later, on November 9, 2015, IDOC produced additional responses to Bown's request, and made a claim of privilege for the first time.  *See Letter (Dkt. No. 82-10).*  On that date, IDOC stated it was withholding some unidentified documents, and explained that "no privilege log is being produced at this time.  As will be indicated in our client's supplemental discovery responses, documents are being withheld from this production under a claim of attorney-client privilege." *Id.*

But as weeks went by and IDOC failed to file a privilege log, Bown was forced to file this motion to compel, arguing that the Court should either order IDOC to file the privilege log or hold that IDOC had waived any privilege.  Instead of producing a privilege log, as required by Rule 26(b)(5), IDOC argued that Bown "provides no legal basis for why he is entitled to production of privileged documents without first making a showing that the documents are not, in fact, privileged." *See IDOC Brief (Dkt. No. 87)* at p. 7.

IDOC's response was specious on two levels.  First, IDOC was clinging to a privilege without complying with the most basic requirement for asserting such a privilege – the filing a privilege log.  Second, IDOC's argument that Bown had the burden of making a showing that the documents were not privileged was directly contrary to governing law.  *U.S. v. Ruehle,* 583 F.3d 600, 608 (9th Cir. 2009) (holding that the party withholding documents on a claim of privilege has the burden of proving privilege).

More than a week after IDOC filed this response brief – and just two days before the hearing on Bown's motion to compel – IDOC filed its privilege log.  Obviously, Bown did not have time before the hearing to fully examine the log and make any challenges to its sufficiency; a decision on that issue is left for another day.

What is clear now, on this record, is that the conduct of IDOC's counsel Phillip J. Collaer and M. Blake Hill is completely unacceptable.  First, they waited months to make a claim of privilege and then failed to file a privilege log – the most basic requirement for asserting such a privilege.  Then they made legal arguments to the Court that were both frivolous and directly contrary to well-established law.  Their conduct required Bown's counsel and this Court to waste time and effort on a portion of the motion to compel. Only when the hearing on the motion was looming did they finally file the privilege log that should have been filed long ago.

The attorney fee award provision of Rule 37(a)(5)(A) was designed to apply to the conduct of Phillip J. Collaer and M. Blake Hill.  In discussing motions to compel, this Rule states that

> [i]f the motion is granted – *or if the disclosure or requested discovery is provided after the motion was filed* – the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney fees.

*See* Rule 37(a)(5)(A) (emphasis added). Collaer and Hill made frivolous arguments and failed to produce the privilege log until after the motion was filed and fully briefed. The Rule states that the Court "must" award fees after giving them "an opportunity to be heard." They had the opportunity because Bown raised his right to fees under this Rule in his opening brief on the motion to compel. *See Bown Brief (Dkt. No. 79-1)* at p. 6. The Rule contains exceptions, but none apply here.

The Court will therefore award Bown his reasonable attorney fees and costs incurred in preparing that portion of the motion to compel devoted to the privilege log. A further discussion of attorney fees will follow below.

**Emails - Spoliation**

Bown complains that although the IDOC has produced ESI from other departments – like the Office of Purchasing – it has not produced ESI from its own department. IDOC responds that any ESI not covered by the litigation hold letter would have been deleted in the ordinary course of electronic document destruction that –during the years 2012 and 2013 – took place every 6 months. *See Kubinski Affidavit, supra* at ¶4. IDOC argues that it was under no duty to save ESI from those earlier years because it was not until June of 2015 that Bown amended his complaint to focus on issues beyond

the narrow circumstances of Bown's heart attack on February 19, 2011. *See IDOC Brief (Dkt. No. 87)* at pp. 6-7.

IDOC's argument is specious. As discussed above, Bown's original complaint – filed in 2012 – alleged that the IDOC defendants failed to supervise Corizon and failed to implement policies that would have protected Bown. Thus, the 2015 amendments to the complaint were simply filling in the details supporting a claim that was made in the original complaint.

But even before 2012, IDOC was put on notice of the challenge to its supervision of Corizon. It was in March of 2011 that Bown's wife threatened IDOC with litigation, a threat IDOC took so seriously that it launched two investigations into the incident, both of which, IDOC claims, were conducted in anticipation of litigation. Because IDOC was supervising Corizon at that time pursuant to a contractual agreement, the only reasonable interpretation of the litigation threat was that it challenged the adequacy of IDOC's supervision of Corizon. Thus, any communications between IDOC and Corizon regarding this incident would be relevant. In addition, IDOC's audits of Corizon's performance around the time of the incident would also be highly relevant.

The Notice of Tort Claim – filed on July 11, 2011 – only confirms this point. Yet, IDOC argues that the "scope of the [Notice of Tort Claim] was narrow, and focused on the events of February 19, 2011." *See IDOC Brief (Dkt. No. 87)* at p. 5. That Notice, IDOC argues, "does not reference contacts between Corizon and IDOC, nor does it mention or refer to audits conducted by IDOC at IMSI." *Id.*

But the Notice contains claims against both IDOC and Corizon. Given that IDOC's only role was to supervise Corizon – and given that IDOC was not directly providing the medical services itself – the only reasonable interpretation of the Notice is that it challenged IDOC's failure to properly supervise Corizon. Thus, the Notice made relevant all contacts between IDOC and Corizon over the incident, and made relevant any audits done by IDOC of Corizon around the time of this incident.

The language of the Notice confirms this conclusion. Among its challenges, the Notice alleges that "[t]he State of Idaho has the constitutional requirement to provide adequate health care for those in their custody, as well as to provide humane treatment." *See Notice (Dkt. No. 87-1).* That statement can only be interpreted one way: IDOC failed to supervise Corizon's provision of health care.

A party must preserve evidence it knows or should know is relevant to a claim or defense of any party, or that may lead to the discovery of relevant evidence. *Lopez v. Santoyo,* 2012 WL 5427957, at *6 (S.D.Cal. Nov.7, 2012). The duty to preserve arises not only during litigation, but also extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation. *Patton v. Wal–Mart Stores, Inc.*, 2013 WL 6158467, at *6 (D.Nev. Nov.20, 2013) (citing *In re Napster, Inc. Copyright Litig.,* 462 F.Supp.2d 1060, 1067 (N.D.Cal.2006)).

Under this standard, Kubinski's litigation hold letter was far too narrow. The letter should have been filed in March or April of 2011 and should have sought the preservation of all ESI and other material concerning (1) Bown's medical emergency on February of 2011; (2) the supervision by IDOC of Corizon and communications between

the two entities concerning the Bown incident; (3) the two investigations of the Bown incident done by OPS and Rona Siegert; and (4) audits by IDOC of Corizon's medical care around the time of the incident.

Bown has the burden of establishing spoliation by demonstrating that IDOC destroyed documents or other items and had "some notice that the documents were potentially relevant to the litigation before they were destroyed." *Ryan v. Editions Ltd. West, Inc.*, 786 F.3d 754, 766 (9th Cir. 2015). Spoliation of evidence "raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it." *Apple Inc. v. Samsung*, 888 F.Supp.2d 976, 998 (N.D.Cal.2012). The finding of spoliation shifts the burden of proof "to the guilty party to show that no prejudice resulted from the spoliation" because that party "is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing." *Id.*

A spoliation charge in this case might be easy to dismiss if the record revealed that (1) IDOC had done a robust search of all of its computer systems, and (2) the search turned up no ESI relevant to this case. But there is substantial evidence in this record casting doubt on both points.

With regard to the latter point, a letter from IDOC confirms the suspicion that substantial ESI must have been generated by the Bown incident. The letter is dated May 31, 2011, (almost two months prior to the Notice of Tort Claim) from Natalie Warner, IDOC's Quality Assurance Manager, to Tom Dolan, Corizon's Regional Manager. *See Letter (Dkt. No. 82-12).* Warner attaches the OPS investigation report and states that

information in that report is "very concerning" to IDOC. *Id.* She demands that Corizon answer twenty probing questions about its performance during Bown's heart attack. *Id.* She wants the answers by June 7, 2011, and directs Corizon to "be prepared to discuss this incident during the 'Expectations' meeting scheduled to occur on June 9." *Id.*

Dolan answered in an email by explaining that answers might be difficult to obtain because Corizon was treating the matter as protected by the privilege. *See Email (Dkt. No. 89-4).* Warner then responds by email that she understands. *Id.*

This correspondence is quite obviously the tip of an iceberg-sized load of communications between IDOC and Corizon concerning the Bown incident. But IDOC has not produced any ESI from its own files on the subject; the meager email correspondence between Warner and Dolan referred to above actually was produced from the files of the Office of Purchasing, an entirely different department from the IDOC.

This raises doubts about the scope of IDOC's search for ESI. To conduct that search, IDOC turned not to a computer expert but instead to one of its Contract Officers, David Robison. *See Robison Affidavit (Dkt. No. 87-3).* Robison does not claim to have any expertise in computer searches generally or in the IDOC's computer system specifically. He describes his duties as including "medical contract administration," and states that he is familiar with the "grievance process" and with the "contracts with health care providers at IDOC facilities." *Id.* at ¶¶ 2-3. Perhaps because he has no expertise in the IDOC's computer system, he fails to identify all the servers and computers that might have responsive information. Instead he only describes, in vague terms, where he searched, not what he should have searched. And he reveals very little about where he

searched – for example, he fails to identify anyone by name whose computer he searched.[2]

Bown is entitled to much more. IDOC must provide a full search by a person with expertise in computers. The Court will direct IDOC to provide that person to work with Bown's counsel to fully identify all possible repositories in the IDOC's computer system, and to develop adequate search protocols for a robust search of all IDOC systems, including individual computers. To accommodate this new search, the Court has already extended deadlines.

There is further evidence in this record that IDOC, and its counsel Phillip Collaer and Blake Hill, have either botched the search for discovery materials, or have made discovery difficult for Bown. In a discovery request, Bown asked for inmate grievances in electronic format. IDOC responded on June 5, 2015, that grievances were only available in hard copy and "are not stored or maintained in an electric format." *See Responses (Dkt. No. 82-2).* This created a substantial burden for Bown's counsel and would make review of the grievances a massive and time-consuming project. *See Robinson Declaration (Dkt. No. 81)* at ¶ 6. When Bown's counsel expressed skepticism about IDOC's representation that grievances were not in electronic format, IDOC's counsel Phillip Collaer repeated the representation that the grievances were not in electronic format. *Id.* But two days later, during a deposition, an IDOC employee revealed that in fact the grievances were kept in electronic format. *Id.* at ¶ 7. IDOC then

---

[2] He states that he "searched archived materials form the personal computers of IDOC employees involved in the auditing of Corizon for archived emails or documents" but fails to name those individuals. *Id.* at ¶5.

produced them in electronic format. This is further evidence that IDOC and its counsel Phillip Collaer and Blake Hill are, at worst, making discovery burdensome for Bown, or, at best, completely inept.

Their discovery abuses extend to failing to sit down with Bown and discuss the scope of the IDOC's search of its computer records. Despite repeated requests by Bown's counsel, IDOC's counsel Phillip Collaer failed to respond at all, and co-counsel Blake Hill gave the completely unhelpful response that "I do not know what the scope of the search was as it pertains to the emails." *See Email (Dkt. No. 82-5); see also Miller Declaration, supra,* at ¶ 7-8. Instead of sitting down with opposing counsel and discussing the scope of the search, as competent counsel routinely do, IDOC's counsel stood mute until they filed the affidavit of David Robison, discussed above, which actually raised more questions than it answered about the scope of the IDOC's search.

This conduct cannot be ignored. It demonstrates, when added together with the other conduct discussed above, that IDOC counsel Collaer and Bown have rendered discovery a miserable slog for Bown by forcing him at every point to make repeated demands and ultimately to file this motion to compel. The consequences for this conduct will be set forth in the section below concerning attorney fees.

With regard to the spoliation claim, the first order of business must be to provide Bown with the robust search of IDOC records to which he is entitled. Once that search is complete, Bown can return to this Court with an appropriate motion if spoliation remains an issue. The Court has set out the law on spoliation above, and discussed evidence inferring that Bown's medical emergency generated a large quantity of ESI, including

communications between IDOC and Corizon.  The central issue now is whether any of that ESI still exists.  If it was destroyed, and spoliation is found, IDOC bears the burden of showing that the spoliation did not prejudice Bown, a seemingly impossible task, although the Court reserves ruling on that issue at this time.

**Attorney Fees**

In the discussion of the privilege log, the Court awarded attorney fees to Bown under Rule 37(a)(5)(A).  Because the privilege log issue was only a part of Bown's motion to compel, the Court did not at that time award fees for the entire motion but just for that portion involving the privilege log issue.  But in the remainder of this decision, the Court has described further conduct of IDOC's counsel that warrants an award of fees for the entire motion under Rule 37(a)(5)(A) and the Court will so order.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to compel (docket no. 79) is GRANTED.  IDOC must produce the following:  Any ESI or other material concerning (1) Bown's medical emergency on February of 2011; (2) the supervision by IDOC of Corizon and communications between the two entities concerning the Bown incident; (3) the two investigations of the Bown incident done by OPS and Rona Siegert; (4) audits by IDOC of Corizon's medical care around the time of the incident; and (5) medical care policies that might bear on Bown's emergency.

IT IS FURTHER ORDERED, that IDOC shall provide a person with expertise in computer searches to meet with Bown's counsel and/or computer expert to agree upon

search protocols to ensure that IDOC's ESI is fully searched for the material specified above.

IT IS FURTHER ORDERED, that following that computer search, and depending on its results, Bown may return to this Court to pursue a claim of spoliation.

IT IS FURTHER ORDERED, that the motion for attorney fees (docket no. 80) is GRANTED.  Attorneys Phillip J. Collaer and M. Blake Hill shall pay a reasonable sum representing the fees and costs incurred by Bown in preparing and filing the motion to compel.  Bown's counsel shall submit his petition for those fees and costs within twenty (20) days from the date of this decision.

DATED: January 8, 2016

_____
B. Lynn Winmill
Chief Judge
United States District Court

.