IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM A. BOWN,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>BRENT D. REINKE; RONA SIEGERT; RANDY E. BLADES; JIMMIE H. CROSBY; DANIEL METTIE; BECKY A. BLAKE; RONALD D. PIXLER; TIMOTHY J. RICHARDSON; CORIZON, INC., fka CORRECTIONAL MEDICAL SERVICES, INC., a Missouri corporation; KAREN B. BARRETT, PA; APRIL DAWSON, MD; CASSIE RICHINS, LPN; and JOHN and JANE DOES 1-10,<br><br>　　　　　Defendants. | Case No. 1:12-cv-00262-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a motion to compel and for attorney fees, and a motion to strike. The motions are fully briefed and at issue. For the reasons explained below, the Court will grant both motions and award attorney fees and costs to the plaintiff.

## LITIGATION BACKGROUND

Plaintiff Bown, an inmate at the Idaho Maximum Security Institution, filed this lawsuit claiming that delays in treating his heart ailment led to permanent injury. Bown later settled with defendant Corizon Inc., the entity providing medical services at the prison under a contract with the Idaho Department of Corrections (IDOC), and also settled with the Corizon medical team defendants (Barrett, Dr. Dawson & Richins).

**Memorandum Decision & Order – page 1**

Several IDOC defendants were found by the Ninth Circuit to be entitled to qualified immunity, leaving only a single remaining defendant, Rona Siegert, the Health Service Director (HSD) for the IDOC. Bown's remaining claim is that Siegert, in her capacity as HSD for the IDOC, failed to properly supervise Corizon and its staff.

In an earlier filed decision, the Court described numerous instances of discovery abuse by defense counsel Phillip Collaer and Blake Hill that ultimately forced Bown to file a motion to compel. *See Memorandum Decision (Dkt. No. 95)*. The Court found "that IDOC and its counsel Phillip Collaer and Blake Hill are, at worst, making discovery burdensome for Bown, or, at best, completely inept." *Id.* at p. 14. Their conduct was so serious that it warranted an award of $43,499.60 in attorney fees and costs against them. *Id.* at p. 16.

In that decision, the Court found that because Bown's lawsuit challenged IDOC's supervision of Corizon, defendants were required to answer Bown's discovery requests seeking all communications between IDOC and Corizon concerning the Bown incident. In making that finding, the Court described the already-produced communications between IDOC and Corizon as being "obviously the tip of an iceberg-sized load of communications between IDOC and Corizon concerning the Bown incident." *Id.* at p. 12.

The Court therefore granted Bown's motion to compel, requiring defendants to, among other things, produce "[a]ny ESI or other material concerning (1) Bown's medical emergency of February of 2011; and (2) the supervision of IDOC of Corizon and communications between the two entities concerning the Bown incident . . . ." *Id.* at p.

**Memorandum Decision & Order – page 2**

15. Bown filed a Request for Production on defendants seeking "all communications between (a) defendants and/or their counsel and (b) CMS/Corizon and/or its counsel concerning this lawsuit." The defendants responded with an objection "insofar as it seeks confidential attorney/client communications or attorney work product."

In an attempt to negotiate a resolution of IDOC's objection, Bown's counsel met and conferred with defense counsel as required by the Court's Local Rules, but the attempt was unsuccessful. Counsel for Bown then contacted the Court seeking informal mediation under the Court's Local Rules, but was told that privilege issues did not qualify for mediation and that the Court would resolve the matter after reviewing a motion to compel and associated briefing. *See Exhibit 9 (Dkt. No. 152-9)* (email from Court staff stating that this privilege issue did not need to be mediated and that filing of motion to compel was proper). Only after those attempts at informal resolution failed did Bown file this motion to compel.

## ANALYSIS

Defendant Siegert's counsel Phil Collaer asserts that he has produced all communications between IDOC and Corizon except for those between himself (as counsel for Siegert and IDOC) and John Burke (Corizon's counsel) occurring since October 30, 2014. That is the date that Collaer alleges Corizon accepted IDOC's tender of defense "and retained Mr. Burke to jointly represent the IDOC defendants [including Siegert]." *See IDOC Brief (Dkt. No. 149)* at p. 3. Collaer states in his Declaration that

> [s]ince October 30, 2014, Mr. Burke and I have jointly represented the IDOC defendants, including Ms. Siegert, with regard to the current litigation. Any communications Mr. Burke and I have had since October

**Memorandum Decision & Order – page 3**

30, 2014, occurred with the expectation that they were protected by the attorney/client or attorney work product privileges.

See Collaer Declaration (Dkt. No. 149-1) at p. 6.[1]

There are three problems with Collaer's assertions. The first is that Collaer failed to provide a privilege log – as required by F.R.C.P. 26(b)(5) – with regard to the communications between himself and Burke that he claims are privileged.[2] This is not the first time in this case that he has claimed privilege and failed to file a privilege log – in that earlier incident, the Court awarded attorney fees and costs against Collaer and his co-counsel for their failure. See Memorandum Decision (Dkt. No. 95) at pp. 6-8. By repeating this failure, they will once again pay Bown's attorney fees and costs.

The second problem is that the record raises serious questions as to whether Collaer has in fact turned over all non-attorney communications. On this issue, Bown offers the affidavit of Natalie Wolfe, the former IDOC Quality Assurance Manager. She asserts that she "did have multiple verbal and written communications with [Corizon Regional Manager] Tom Dolan and Rona Siegert regarding the [Bown] incident and investigation." See Wolfe Affidavit (Dkt. No.152-7) at ¶ 9. She also attended and chaired meetings between staff from IDOC and Corizon discussing the Bown incident and prepared agendas for those meetings. Id. at ¶ 10. She claims that "any document I deemed relevant would be printed and place[d] in the 'Contract File' located at IDOC

---

[1] Collaer asserts that any communications between him and Burke occurring before October 30, 2014, were solely regarding the tender and hence would not be responsive to the discovery request.

[2] While Collaer did provide a privilege log in 2015 it does not contain any mention of privileged communications between himself and Burke.

Headquarters' Management Services Office." *Id.* at ¶ 11.  Bown's heart ailment occurred in 2011 and Wolfe was working at IDOC at that time and until 2013, so there would be about two years of documentation in the Contract File collected by her and potentially more collected by her replacement.  Yet Collaer has produced nothing from that Contract File, according to Bown.  The Court will grant that portion of the motion to compel seeking all documents from the Contract File referred to in Wolfe's affidavit.

The third problem concerns Collaer's allegation that he and Corizon attorney John Burke have been jointly representing Siegert and IDOC since October 30, 2014, when Corizon accepted IDOC's tender of defense (as discussed above).  Analysis of this issue requires a review of this litigation.

Bown's complaint, filed in 2011, originally named Corizon Inc., individual Corizon agents/employees, and individual IDOC employees.  Bown's claim against the IDOC defendants was that they failed to properly supervise Corizon.

In 2012 and again in 2014, IDOC tendered its defense to Corizon.  About a week after the 2014 tender, this Court approved a stipulated settlement and dismissed Corizon Inc. and the individual Corizon defendants (Barrett, Richens & Dr. Dawson).  *See Order (Dkt. No. 42)*.  About two months after this settlement, on October 30, 2014, Corizon gave a limited acceptance of IDOC's tender, stating that it was accepting the tender "only to the extent of allegations of inadequate and/or negligent medical care involving the acts or omissions of Corizon, its personnel and/or contractors."  *See Letter (Dkt. No. 154-1)*.

This limited acceptance is odd – the limitation appears to eclipse the acceptance.  The limited acceptance seems to say that Corizon is not agreeing to defend or indemnify

**Memorandum Decision & Order – page 5**

IDOC for that portion of the lawsuit alleging IDOC failed to supervise Corizon because that allegation focuses only on the acts of IDOC (Siegert), not Corizon. But that was the entire focus of the case against IDOC. *See Bown's Brief (Dkt. No. 152)* at p. 6 (stating that "plaintiff is seeking relief based upon her [Siegert's] acts and omissions while acting in her role with IDOC, not Corizon"). It is undisputed that under Idaho law and federal law, IDOC could only be held liable for its own failures – it could not be held vicariously liable for the acts of Corizon – and yet Corizon was covering only its own conduct. This sounds more like a rejection of the tender than a limited acceptance.

IDOC's counsel Phil Collaer picked up on this immediately. On November 25, 2014, less than a month after Corizon's limited acceptance, Collaer met with Corizon's counsel John Burke to discuss this limited acceptance issue. Collaer summarized that meeting in a letter dated December 9, 2014, quoted in part below:

> During our meeting, [co-counsel Kubinski] and I were frustrated that the discussion concerning the assumption of the defense focused on the suggestion that because Corizon settled all claims against itself and its employees, that fact somehow mitigated its obligation to defend and indemnify [IDOC]. As I understand your position, it is Corizon's belief that its obligations relate only to actions taken by Corizon employees. . . . The flaw in this approach is the fact it renders the defense and indemnity obligations of the contract meaningless. [Under state and federal law] IDOC defendants cannot be held vicariously liable for the actions of Corizon or its employees . . . . Applying the reasoning suggested during our meeting, I have a difficult time envisioning a factual scenario where IDOC would be entitled to a defense or indemnity. . . . .I have been instructed to advise you that Corizon is in breach of the contract between itself and the [IDOC].
> . . . .
> Accordingly, it is our intention to go forward with the defense. At the conclusion of the case, we expect full reimbursement for all costs and attorney's fees associated with the defense of this matter.

**Memorandum Decision & Order – page 6**

*See Letter (Dkt. No. 154-1).* Collaer argues that the Court should not consider his letter for two reasons: (1) It was produced to Bown during settlement negotiations and hence cannot be considered as evidence; and (2) It was produced as part of a mass production on a tight time schedule where Collaer did not have time to do a full privilege review.

Both reasons are specious. The letter was produced by Collaer to Bown in response to Bown's First Set of Requests for Production of Documents. *See First Set (Dkt. No. 154-1).* Bown had asked for "all demands for indemnity made by defendants" and Collaer responded by producing four letters to Bown, including the letter quoted above. This production was not part of a massive document dump and was not part of settlement talks, but was instead produced intentionally by Collaer as part of a small-scale discovery response. The Court will therefore consider the letter.

What does the letter mean? It throws considerable doubt on Collaer's unequivocal statement to the Court that he and Burke have been jointly representing IDOC and Siegert since October 30, 2014. Indeed, in just a few weeks from that date, Collaer was accusing Burke and Corizon of breach of contract for failing to make a meaningful acceptance of the tender. After making that accusation, Collaer states he would "go forward with the defense" himself and seek damages later from Corizon.

Conspicuously absent in the record is any affidavit or declaration from Burke. The record does contain, however, a letter Burke wrote to Bown's counsel on October 29, 2019, in response to Bown inquiring whether Burke was jointly representing Siegert with Collaer. *See Letter (Dkt. No. 154-4).* In that letter Burke states in part as follows:

**Memorandum Decision & Order – page 7**

> Please note that on October 30, 2014, I was retained to represent the IDOC insofar as medical care claims involving the acts or omissions of Corizon, its personnel and/or contractors were directed against the IDOC. I was retained in this capacity in connection with Corizon's limited acceptance of the IDOC's tender of defense. That is, Corizon accepted the IDOC's tender of defense, but only to the extent allegations of inadequate and/or negligent medical care involved the acts or omissions of Corizon, its personnel, and/or contractors. In that capacity, I assisted the IDOC's counsel in defense of the claims alleged against the IDOC and its employees, including Rona Siegert.
>
> On April 26, 2017, Corizon notified the IDOC that it was withdrawing its limited acceptance of tender as it had satisfied any duties to defend or indemnify with settlement of the underlying state court case in March 2014. Although I have assisted Mr. Collaer in responding to discovery in this matter, I have not entered a Notice of Appearance for IDOC or Rona Siegert. I also have not been asked to appear on behalf of Ms. Siegert at any future trial of this action.

*Id.* What jumps out from this letter is Burke's revealing that Corizon's limited acceptance of the tender was withdrawn on April 26, 2017. Collaer said nothing about that in his Declaration quoted earlier, a material omission given his unequivocal statement to the Court – as quoted above but worth repeating – that "[s]ince October 30, 2014, Mr. Burke and I have jointly represented the IDOC defendants, including Ms. Siegert, with regard to the current litigation." *See Collaer Declaration (Dkt. No. 149-1)* at p. 6. How can Collaer's statement be true after April 26, 2017 when (1) the limited acceptance of the tender was withdrawn; (2) Burke did nothing to formally enter a representation for Siegert after that withdrawal; and (3) after the withdrawal, Burke only "assisted Mr. Collaer in responding to discovery," an effort akin to a paralegal. There is no affidavit or declaration from Burke confirming Collaer's assertion of joint representation. Collaer's own statement is highly suspect given the circumstances set forth above.

**Memorandum Decision & Order – page 8**

Collaer has created a tangled mess here. By doing so, he fails to carry his burden of proof: A party claiming the joint defense privilege bears the burden of showing "(1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived" *See* F*leming v. Escort, Inc*., 2015 WL 632258 at *2 (D. Idaho February 13, 2015). From the discussion above it is clear that Collaer has failed to carry his burden to show that any communications between himself and Burke after April 26, 2017, were part of a joint representation. What about communications between October 30, 2014 and April 26, 2017? Collaer says in his Declaration that there was a joint representation, but he has little credibility given his failure to mention Corizon's withdrawal of the tender, and given his past misconduct in discovery. Burke states in his letter he was "retained to represent the IDOC" on October 30, 2014, but puts such a limitation on that retention that Collaer deemed it a breach of contract. Given this, the Court finds that Collaer has also failed to carry his burden of proving a joint representation between himself and Burke during the period October 30, 2014 to April 26, 2017.

The Court will therefore reject Siegert's claim of attorney client privilege and work product, and grant the motion to compel seeking all communications between Collaer and Burke between October 30, 2014, and the present.

**Motion to Strike**

Bown filed a motion to strike Collaer's Declaration on the ground that it contained falsehoods. The Court finds the motion moot given that the Court will grant Bown's

**Memorandum Decision & Order – page 9**

motion to compel and award fees and costs. As expressed above, the Court has found that Collaer's Declaration contains statements that are not credible, and hence Bown was justified in filing the motion to strike. In essence, by filing such a Declaration, Collaer has once again forced opposing counsel to waste time and effort in countering the filing. Thus, there are grounds for awarding fees and costs to Bown for the preparation and filing of the motion to strike.

**Attorney Fees & Costs**

In the Court's prior opinion, discussed above, awarding fees and costs against Collaer for, among other things, failing to file a privilege log and making discovery a "miserable slog" for Bown's counsel, *see Memorandum Decision (Dkt. No. 95)* at p. 14, the Court held that its award was proper under Rule 37(a)(5)(A), which provides in pertinent part as follows:

> [i]f the motion [to compel] is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court *must*, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney fees.

*See* Rule 37(a)(5)(A) (*emphasis added*). Once again, the Court has granted Bown's motion to compel, requiring the Court to award Bown his fees and costs for pursuing this motion. The Court finds further that Collaer's failure once again to file a privilege log to support his claim of privilege provides further grounds for awarding fees and costs. The Rule states that the Court "must" award fees after giving Collaer "an opportunity to be heard," an opportunity given here through full briefing on this issue. The Rule

contains exceptions, but none apply here. The Court has also, as discussed above, awarded fees and costs incurred by Bown in filing all material associated with his motion to strike.

The Court will therefore direct Bown to file an affidavit of all fees and costs he incurred in (1) preparing and filing the motion to compel and associated documents; and (2) preparing and filing the motion to strike.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion to compel (docket no. 147) is GRANTED, and that defendant shall produce to plaintiff within 14 days from the date of this decision (1) all communications between defendants (and their counsel) and CMS/Corizon (and its counsel) concerning this lawsuit; and (2) the Contract File referred to in the Wolfe affidavit discussed above.

IT IS FURTHER ORDERED, that the motion to strike (docket no. 154) is DEEMED MOOT.

IT IS FURTHER ORDERED, that Bown shall, within 10 days from the date of this decision, file an affidavit of fees and costs incurred in (1) preparing and filing the motion to compel and associated documents; and (2) preparing and filing the motion to strike, identifying the hourly rate and the hours expended.

DATED: March 18, 2020

_____
B. Lynn Winmill
U.S. District Court Judge