UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WILLIAM A. BOWN,<br><br>Plaintiff,<br><br>v.<br><br>RONA SIEGERT,<br><br>Defendant. | Case No. 1:12-cv-00262-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiff Bown's petition for award of attorney fees. (Dkt. 160.) For the reasons set forth below, the Court will grant the petition, and award Bown the sum of $80,432.19 as attorney fees and costs reasonably incurred in preparing and filing Bown's motion to compel (Dkt. 147) and associated documents, and in preparing and filing the motion to strike (Dkt. 154).

## BACKGROUND

Plaintiff Bown, an inmate at the Idaho Maximum Security Institution, filed this lawsuit claiming that delays in treating his heart ailment led to permanent injury. Defendant Rona Siegert, the Health Service Director (HSD) for the Idaho

Department of Corrections (IDOC), is the only remaining defendant in this action.[1] Bown claims that Siegert, in her capacity as HSD for the IDOC, failed to properly supervise Corizon and its staff.

In earlier decisions, the Court has described numerous instances of discovery abuse by defense counsel Phillip Collaer and Blake Hill. This discovery abuse has ultimately forced Bown to file two motions to compel, both of which the Court has granted (Dkts. 95, 159).

In the order granting the first motion to compel, which the Court entered on January 8, 2016, the Court found "that IDOC and its counsel Phillip Collaer and Blake Hill are, at worst, making discovery burdensome for Bown, or, at best, completely inept." (Dkt. 95 at 14.) Their conduct was so serious that it warranted an award of $43,499.60 in attorney fees and costs against the IDOC defendants. (*Id.* at 16.)

---

[1] Defendant Corizon Inc. and the Corizon medical team defendants (Barrett, Dawson, and Richins) were dismissed on August 6, 2014, pursuant to a stipulation of the parties. (*See* Dkts. 41, 42.) In May 2016, Plaintiff conceded summary judgment should be entered as to IDOC defendants Mettie, Blake, Pixler, and Richardson. (*See* Dkts. 109, 106 at 3 n.2.) The Ninth Circuit held that IDOC defendants Reinke, Blades, and Crosby are entitled to qualified immunity (Dkts. 136, 137), and, pursuant to stipulation, all claims for injunctive relief against the defendants were dismissed with prejudice. (*See* Dkts. 144, 145.) This resulted in the termination of all claims against defendants Reinke, Blades, and Crosby. However, many of these defendants have not been designated as having had the claims dismissed against them on the Court's docket, an issue that will be remedied through this order.

In the order granting the second motion to compel, which the Court entered on March 18, 2020, the Court noted that defense counsel has engaged in ongoing discovery abuse, "has created a tangled mess," has filed a declaration that contained statements that were not credible, and "has once again forced opposing counsel to waste time and effort in countering the filing." (Dkt. 159.) The Court found that Bown is entitled to recover all fees and costs incurred in (1) preparing and filing the motion to compel and associated documents; and (2) preparing and filing the motion to strike. (*Id.* at 10-11.) The Court directed Bown to file an affidavit of those fees and costs. Bown's petition for award of attorney fees and costs is now before the Court.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(a)(5)(A), if the Court grants a motion to compel, or if disclosure of requested information is provided after the motion was filed, the Court must, with exceptions inapplicable here, order the party whose conduct necessitated the motion "to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees."

In the Ninth Circuit, the proper method for determining reasonable attorney fees is to use the "lodestar method." *Haeger v. Goodyear Tire and Rubber Co*., 813 F.3d 1233, 1249 (9th Cir. 2016). First, the trial court calculates attorney fees by multiplying the number of hours reasonably spent by counsel by a reasonable

hourly rate. *Cotton v. City of Eureka, Cal*., 889 F. Supp. 2d 1154, 1165 (N.D. Cal. 2012). In setting the rate, the district court also should consider the factors set forth in *Kerr v. Screen Extras Guild, Inc*., 526 F.2d 67, 69-70 (9th Cir. 1975). The *Kerr* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

## ANALYSIS

Bown seeks to recover the fees incurred for three attorneys and two paralegals. Attorney John Robinson worked 102.5 hours and requests an hourly rate of $400. Attorney Elisa Massoth worked 25.7 hours and requests an hourly rate of $360. Attorney Isaiah Gross worked 87.6 hours and requests an hourly rate of $300. As to the paralegals, Katie Garlick worked 75.68 hours for which Bown seeks an hourly rate of $150, and Emily Humphrey worked 12.8 hours for which Bown seeks an hourly rate of $125.

Siegert opposes the petition, arguing that the hourly rate requested by Bown

is too high, and that the number of hours expended by Bown's counsel is not reasonable.

### A.    Attorney Hourly Rates

Although the Court is awarding fees under Federal Rule of Civil Procedure 37, the Ninth Circuit has nevertheless held that because the sanctions were related to an inmate's § 1983 action, the fee award is limited by the Prison Litigation Reform Act (PLRA). *Webb v. Ada County*, 285 F.3d 829 (9th Cir. 2002) (affirming application of PLRA cap on attorney fee award for contempt and discovery sanctions in prisoner's § 1983 case). The PLRA puts a cap on the hourly rates of 150% of the hourly rate established for payment of court-appointed counsel. *See* 42 U.S.C. § 1997e(b)(3). The hourly rate for court-appointed attorneys during under the Criminal Justice Act in 2019[2] was $148, resulting in a PLRA rate of $222 (150% of $148). *See Chapter 2, § 230.16: Compensation and Expenses of Appointed Counsel: Hourly Rates and Effective Dates in Non-Capital Cases*, United States Courts, retrieved from: https://www.uscourts.gov/rules-policies/judiciary-policies/cja-guidelines/chapter-2-ss-230-compensation-and-

---

[2] The vast majority of the hours for which Bown seeks to recover attorney fees were incurred during the period of February 15, 2019 to December 31, 2019, and are thus subject to the PLRA hourly rate of $222.

expenses#a230_16. Bown asks, however, that the Court use a "multiplier" that would calculate fees based on full market rates.

A fee applicant bears the burden of proving that a fee enhancement is necessary and must produce "specific evidence" supporting the award. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010). In adjusting an award, however, the district court must focus on the *Kerr* factors "that are not already subsumed in the initial lodestar calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996) *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997). Factors one through four and six are considered subsumed in the lodestar calculation. *Id.* at 364 n. 9. Those *Kerr* factors determined not subsumed in the lodestar calculation therefore include:

> (5) the customary fee, ... (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Id.*; *Kerr*, 526 F.2d at 70. "Where a fee award is multiplied upward to account for factors not subsumed in the lodestar calculation, it is still 'based on' the initial lodestar fee rate; the fee is increased from that base point to ensure reasonable compensation of counsel in those very narrow circumstances when the lodestar undervalues counsel." *Kelly v. Wengler*, 7 F. Supp. 3d 1069, 1083 (D. Id. 2014).

As the Court previously found in connection with the prior award of attorney

fees,

> The PLRA rates significantly undervalue the work of Bown's counsel.
> The PLRA rates are far below market rates in this region for this type
> of work based on the Court's long experience in evaluating fee
> petitions. That provides a strong incentive for discovery abuses
> because any eventual fee award will simply be a "cost of doing
> business" that can easily be absorbed. Moreover, as the Court pointed
> out in its decision, the conduct of defense counsel wasted not only the
> time and efforts of Bown's counsel but also that of the Court.
>
> Of course, not every sanction demands the application of a multiplier.
> The Webb case is an example where attorney fees awarded as a
> discovery abuse sanction were limited by the PLRA. But the conduct
> here – described at length in the Court's earlier decision – was
> egregious enough to warrant a multiplier.
>
> The Court therefore finds that the PLRA hourly rate significantly
> undervalues the time of Bown's counsel. Accordingly, a multiplier
> must be applied to bring those hourly rates more in line with fair
> market rates.

(Dkt. 114 at 4-5.)

The Court finds that this same reasoning applies here and will thus apply a

multiplier to the PLRA rates as it did previously to better reflect a reasonable rate

for the rare and exceptional circumstances presented in this case. The Court finds

the following multipliers, as requested by Bown, to be appropriate:

| Attorney | Market Rate | PLRA Rate | Multiplier | Multiplier Rate |
|----------|-------------|-----------|------------|-----------------|
| Robinson | $400 | $222 | 1.8 | $400 |
| Massoth | $360 | $222 | 1.62 | $360 |
| Gross | $300 | $222 | 1.35 | $300 |

**B.** **Paralegal Hourly Rate**

The PLRA allows an award of paralegal fees under the same rate as allowed for attorney fees, which, as noted above, in 2019 was $222 per hour. *See Perez v. Cate*, 632 F.3d 553, 556-57 (9th Cir. 2011) (holding that PLRA allows an award of paralegal fees at a rate up to that allowed for attorney fees, i.e., 150% of the rate allowed for court-appointed counsel).

Bown seeks an hourly rate of $150 for paralegal Katie Garlick, and an hourly rate of $125 for paralegal Emily Humphrey. Defense counsel has not objected to these hourly rates. (*See* Dkt. 161.) Nonetheless, the Court reviews these rates for reasonableness.

The Court previously found that a $100 per hour rate for paralegal services in this case was too high and that the appropriate rate would be $65 per hour (Dkt. 114). However, recent decisions in this district have indicated that an hourly rate of between $100 and $190 is within the range of rates regularly approved for paralegals in bankruptcy and civil matters in the District of Idaho. *See, e.g., In re Hopkins Nw. Fund LLC*, 567 B.R. 590, 596 (D. Idaho 2017); *Balla v. Idaho State Bd. of Correction*, 2016 WL 6762651, (D. Idaho Feb. 1, 2016) (Carter, J.) (finding that an hourly rate of $190.50, which was the maximum rate under the PLRA, was appropriate for one paralegal, and an hourly rate of $165 was appropriate for another paralegal); *Asset Vision, LLC v. Fielding*, No. 4:13-cv-00288-BLW (D.

Idaho Dec. 16, 2014) (Winmill, J.) (finding reasonable paralegal rates of $125-$130 per hour).

In the affidavit in support of the petition, paralegal Garlick sets forth her education and experience and explains her involvement and time expended on this case. (Dkt. 160-3.) Further, attorney Robinson represents that paralegal Garlick provided extensive assistance in this matter; that, beyond normal paralegal activities, she drafted numerous legal papers related to the motion to compel that required little to no modification; and that her involvement and legal writing reduced the amount of attorneys' fees requested. (Dkt. 160-2 at 12.) After reviewing the information provided by counsel, and the record in this case, the Court finds an hourly rate of $130 for paralegal Garlick to be reasonable.

Robinson represents that paralegal Humphrey provided indispensable assistance in achieving the results that have been received thus far, and that her "time entries are minimal, accurate and worthy of payment." (Dkt. 160-2 at 12.) A review of the work conducted by paralegal Humphrey (*see id.* at 28) convinces the Court that this work does not extend beyond the work of a typical paralegal, and there is nothing in the moving papers that convinces the Court that Humphrey's education, experience, or efforts in the case warrant a $125 hourly rate. The Court finds an hourly rate of $100 for paralegal Humphrey to be reasonable.

### C.      Number of Hours for Which Compensation is Sought

Bown seeks to recover fees for a total of 304.28 attorney and paralegal hours. (*See* Dkt. 160 at 2.) Siegert challenges the number of hours billed, arguing that the time for which Bown seeks compensation is unreasonable and excessive, and that Bown is seeking to recover for time spent on issues unrelated to the motion to compel. (Dkt. 161.)

### 1.  The Hours Claimed are Reasonable, with the Exception of Hours Claimed for Deposing Panther and Siegert

In challenging the number of hours claimed by Bown, Siegert assumes that only the time spent directly drafting the motion to compel and reply in support, and the time spent directly drafting the motion to strike and reply in support, are compensable. The Court rejected a similar argument when it was raised by the defense in relation to the Court's previous award of fees under Rule 37. The argument is rejected again here for the same reasons.

In the order granting Plaintiff's second motion to compel, the Court awarded fees and costs incurred in *preparing and filing* the motion to compel and associated documents, and in *preparing and filing* the motion to strike. (Dkt. 159.) To prepare for filing the motion to compel, Plaintiff's counsel had to expend many hours and resources to unravel the tangled mess defense counsel has created in this case with his ongoing discovery abuses. Untangling this mess was necessary for Bown's

counsel to determine what information responsive to Bown's discovery requests was still outstanding and being wrongfully withheld by the defense. Bown's counsel's efforts to untangle this mess included, among other things, scouring thousands of pages of largely irrelevant discovery documents, drafting letters to and conferring with defense counsel to remedy defense counsel's misrepresentations, traveling from Wyoming to Boise to conduct depositions (discussed in more detail below), and searching for and communicating with third parties to shed light on undisclosed discovery. These efforts were necessary steps in preparing the second motion to compel, and the time spent engaging in these efforts is thus directly related to that motion and legitimately included in the fee petition.

Similarly, the time Plaintiff's counsel spent preparing and filing the motion to strike, and not just drafting the motion to strike, is legitimately included in the fee petition. This includes time spent investigating, conferring, discussing, strategizing, and researching the representations made by Collaer in his affidavit, which were found to lack credibility.

Finally, the time Plaintiff's counsel spent preparing and filing the petition for award of attorney fees is compensable under Rule 37 and is legitimately included in the fee petition. See *Lexington Luminance LLC v. Feit Elec. Co., Inc.*,

2020 WL 6594991, at *8 (C.D. Cal. Sept. 3, 2020) ("When a party seeks

reasonable expenses associated with bringing a successful motion to compel under

Rule 37(a)(5), the fees incurred in preparing the fee application are recoverable.");

*Sure Safe Industries Inc., v. C & R Pier Mfg*., 152 F.R.D. 625, 627 (S.D. Cal.

1993) ("Attorneys' fees in preparation of requests for attorneys' fees sanctions are

recoverable under Rule 37."); *see also Anderson v. Dir., Office of Workers Comp.*

*Programs*, 91 F.3d 1322, 1325 (9th Cir. 1996) ("It's now well established that time

spent in preparing fee applications under 42 U.S.C. § 1988 is compensable. Such

compensation must be included in calculating a reasonable fee because

uncompensated time spent on petitioning for a fee automatically diminishes the

value of the fee eventually received." (citation omitted)).

The Court finds, with the exception noted below, that the time claimed by

Bown's counsel and paralegals was reasonably expended in preparing and filing

the second motion to compel and motion to strike and is therefore compensable

under the Court's earlier decision and Rule 37.

### 2.  Time Expended to Depose Panther and Siegert

Siegert contends that expenses associated with the depositions of Paul

Panther and Defendant Siegert are not recoverable as the motion to compel was

limited to IDOC's counsel's assertion of attorney-client privilege regarding

communications between IDOC's counsel and Corizon's counsel and that issue did

not come up during the depositions. The Court disagrees. However, as discussed below, the Court finds that only a portion of the deposition fees are recoverable as related to the second motion to compel.

In the Order granting Bown's second motion to compel, the Court noted numerous problems with defense counsel's discovery conduct and granted broad relief. First, defense counsel Collaer failed to, again, provide a privilege log with regard to communications that he claimed were privileged. The Court therefore found that Bown was entitled to recover attorney fees and costs resulting from that failure. (Dkt. 159 at 4.)

Second, there were serious questions as to whether Collaer had in fact turned over all non-attorney communications, and there was evidence that he had not. Thus, the Court granted that portion of the motion to compel seeking documents from the Contract File referred to in the affidavit of Natalie Wolf. (*Id.* at 4-5.)

Third, the record also raised serious questions regarding Collaer's representations that he and Burke had jointly represented Siegert and IDOC since October 30, 2014. (*Id.* at 5-10.) The Court ultimately found that Collaer had failed to carry his burden regarding joint representation, noting that Collaer "has created a tangled mess here," and that statements in his affidavit lacked credibility. The Court thus granted that portion of the motion seeking all communications between

Collaer and Burke between October 30, 2014, and the date of the Order.

Finally, the Court awarded attorney fees and costs incurred by Bown in preparing and filing the second motion to compel and associated documents, as well as the fees and costs incurred in preparing and filing the motion to strike. (*Id.* at 10.)

Thus, contrary to Siegert's argument, the Order granting the second motion to compel, and awarding the attorney's fees incurred in preparing and filing that motion and associated documents, as well as in preparing and filing the motion to strike, was broad and reaches far beyond the communications between Collaer and Burke.

Turning to the depositions of Panther and Siegert, Bown contends that through these depositions, his counsel were able to identify additional internal documents that were withheld by defense counsel, and explore the issue of why, according to Defendant's counsel, there was a lack of discoverable ESI. Further, Bown's counsel believed that, due to defense counsel's ongoing conduct of obstructing discovery, they had "very little choice but to conduct in-person depositions in order to even determine what Defendant may be withholding." Finally, due to "defense counsel's disorganized, unruly, and misleading production of documents, this case has become very document intensive," and because "active

document management, review, and cross-referencing" was needed during the depositions, at least two attorneys needed to be present. (*Gross Decl.*, Dkt. 160-1 at 2-3; *see Johnson Decl.*, Dkt. 160-2.)

The Court has reviewed the transcripts of the Panther and Siegert depositions, which Siegert attached to her opposition. (*See* Dkt. 161-2 and 161-3). Although specific questions regarding communications between Mr. Collaer and Mr. Burke were not raised during these depositions, there was extensive questioning directly related to the issues raised in the second motion to compel.

The transcript of the Panther deposition reveals that a great amount of time and effort was spent during that deposition to determine discovery retention practices, including retention of ESI, and to determine whether there were undisclosed documents/ESI responsive to Plaintiff's discovery requests. (*See Panther Dep.*, Dkt. 161-2.) Similarly, the transcript of the Siegert deposition included questioning seeking to determine whether there was undisclosed information responsive to Plaintiff's discovery requests, such as written IDOC policies, manuals, meeting logs, and standard operating procedures. Thus, these depositions relate directly to issues raised in the second motion to compel.

On the other hand, Bown does not claim, and the Court does not find, that the sole purpose of either the Panther deposition or the Siegert deposition was to

explore issues related to the second motion to compel. The Court thus finds that only a portion of the time expended by Bown's counsel to conduct the Panther and Siegert depositions is related to the second motion to compel, and further finds it appropriate and reasonable to attribute 50% of the deposition fees as being related to and necessary to preparing the motion. Accordingly, 50% of the following time will be struck as not expended in relation to the second motion to compel:

| Attorney/Paralegal | Date | Description | Hours |
|---|---|---|---|
| Robinson | 7/9/19 | Travel to Boise and prep for Panther deposition | 6.0 |
| Robinson | 7/10/19 | Depose Panther | 3.5 |
| Robinson | 7/10/19 | Prep for Siegert depo | 2.0 |
| Robinson | 7/11/19 | Siegert depo; review SDT disc. | 4.2 |
| Robinson | 7/12/19 | Travel to Jackson | 6.0 |
| Gross | 7/9/19 | Travel to Boise | 6.0 |
| Gross | 7/9/19 | Prepare for Siegert Dep | 4.2 |
| Gross | 7/10/19 | Attend Panther Depo | 3.5 |
| Gross | 7/11/19 | Depose Siegert | 4.2 |
| Gross | 7/12/19 | Travel to Jackson | 6.0 |
| Garlick | 5/2/19 | Draft R. 30(b)(6) | 0.3 |
| Garlick | 6/3/19 | NODs, depo scheduling | 0.8 |
| Garlick | 6/20/19 | NODs, depo scheduling | 1.0 |
| Garlick | 6/20/19 | NODs, depo scheduling | 0.6 |
| Garlick | 6/25/19 | Amend NOD, Rule 30(b)(6) | 0.5 |
| Garlick | 7/3/19 | Amend NOD, scheduling | 0.5 |
| Garlick | 7/10/19 | Locate/send depo exhibits | 0.5 |
| Garlick | 7/29/19 | Panther depo summary | 1.0 |
| Garlick | 7/31/19 | Panther depo summary | 2.7 |
| Humphrey | 8/8/19 | Siegert depo summary | 2.0 |
| Humphrey | 8/12/19 | Siegert depo summary | 3.0 |
| Humphrey | 8/14/19 | Siegert depo summary | 2.0 |
| Humphrey | 8/14/19 | Siegert depo summary | 2.0 |

With this adjustment, and the adjustment in the paralegal hourly rate, discussed above, the Court finds the reasonable fees incurred in preparing and filing the second motion to compel to be $78,761.90, summarized as follows:

| Attorney or Paralegal | Hours Claimed | Hours Struck | Hours Allowed | Hourly Rate | Total |
|---|---|---|---|---|---|
| Robinson | 102.5 | 10.85 | 91.65 | $400 | $36,660.00 |
| Massoth | 25.7 | 0.0 | 25.7 | $360 | $9,252.00 |
| Gross | 87.6 | 11.95 | 75.65 | $300 | $22,695.00 |
| Garlick | 75.68 | 3.95 | 71.73 | $130 | $9,324.90 |
| Humphrey | 12.8 | 4.5 | 8.3 | $100 | $830.00 |
| | | | | **TOTAL** | **$78,761.90** |

### D.    Costs

Bown seeks reimbursement of costs in the amount of $3,288.79. With the exception of $51.79 (Dkt. 160-4 at 6), the costs were incurred in connection with the Panther and Siegert depositions, and include costs for travel, lodging, food, and copies. (Dkt 160-1 at 12; Dkt. 160-2 at 27.) For the reasons discussed above, the Court finds 50% of these costs to be related to the second motion to compel and compensable under Rule 37. The Court will accordingly strike 50% of the costs associated with those depositions. The Court finds the costs reasonably incurred in preparing and filing the motion to compel and motion to strike to be $1,670.29.

### E.    Whether Defendant has complied with the Court's Order

In his reply brief, Bown contends that Siegert has not complied with the Court's Order requiring Bown to produce, by April 1, 2020, "(1) all

communications between defendants (and their counsel) and CMS/Corizon (and its counsel) concerning this lawsuit; and (2) the Contract File referred to in the Wolfe affidavit discussed above." (Dkt. 162 at 7-8 (citing Dkt. 159).) Bown states that he does not believe that Siegert has fully complied with this requirement imposed by the Court. Attached to the reply is the deposition of Natalie Wolfe, formerly Natalie Warner, in which Ms. Wolfe indicates that the "Contract File" produced by Siegert is incomplete. (Dkt. 162; Dkt. 162-1.)

Following the filing of Bown's reply brief, defense counsel Collaer filed a second declaration in which he represents that upon receipt of Bown's reply, he reviewed the affidavit of Ms. Wolfe, and conferred with IDOC personnel regarding the documents that Ms. Wolfe indicated were missing (*see* Dkt. 163). Collaer further represents that an exhaustive search was conducted to locate the missing documents, and that documents located as a result of the search have been provided to Bown's counsel.

Bown has not filed a response to the Collaer affidavit. The Court will thus assume that the issue has been resolved.

## ORDER

**IT IS ORDERED that:**

**1.** Plaintiff's Petition for Award of Attorneys' Fees (Dkt. 160) is GRANTED as follows: Plaintiff is awarded attorney and paralegal fees in the

amount of $78,761.90, and costs in the amount of $1,670.29, for a total award of $80,432.19.

2.      Defendants Reinke, Blades, and Crosby are DISMISSED from this action pursuant to the Ninth Circuit's ruling that these defendants are entitled to qualified immunity (Dkts. 136, 137), and the parties' stipulation that all claims for injunctive relief be dismissed with prejudice (Dkts. 144, 145). The Clerk of the Court is directed to designate defendants Reinke, Blades, and Crosby terminated from this action as of July 15, 2019.

3.      Defendants Mettie, Blake, Pixler, and Richardson are DISMISSED from this action pursuant to Plaintiff's concession that summary judgment in their favor is proper (*see* Dkt. 106 at 3 n.2; Dkt. 109), and the parties' stipulation that all claims for injunctive relief be dismissed with prejudice (Dkts. 144, 145). The Clerk of the Court is directed to designate defendants Mettie, Blake, Pixler, and Richardson as terminated from this action as of the date this Order is entered.

DATED: December 23, 2020

B. Lynn Winmill
U.S. District Court Judge